# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-1379
Lower Tribunal No. 2017-CA-007010-O

_____

FLORIDA BC HOLDINGS, LLC d/b/a SYNERGY EQUIPMENT,

Appellant,

v.

JAY E. REESE,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Vincent S. Chiu, Judge.

December 21, 2023

MIZE, J.

Appellant, Florida BC Holdings, LLC ("Synergy"), appeals a final judgment entered in favor of Appellee, Jay E. Reese ("Reese"), following a jury trial on Reese's claim for tortious interference with an advantageous business relationship.[1] The jury awarded Reese damages for lost wages in the amount of $36,643.50 and damages for mental anguish in the amount of $50,000.00. Synergy argues that the

_____

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

trial court erred by denying Synergy's motion for directed verdict and its motion to set aside the verdict concerning the issues of: (1) liability for Reese's claim for tortious interference with an advantageous business relationship; and (2) whether Florida's impact rule barred Reese from recovering emotional distress damages on his claim for tortious interference with an advantageous business relationship. We affirm the final judgment in full. However, for the reasons explained below and pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with *Reid v. Daley*, 276 So. 3d 878 (Fla. 1st DCA 2019). Further, we certify the following two questions to be of great public importance:

(1)     Subject to exceptions previously recognized by the Supreme Court of Florida, does the impact rule generally apply to intentional torts?

(2)     Does the impact rule apply to the tort of tortious interference with an advantageous business relationship and, if so, does the impact rule apply when such tort is committed with actual malice?

## Background and Procedural History

Synergy employed Reese as a sales coordinator beginning in September 2015. As part of its new hire process, Synergy requires new employees to complete a new hire paperwork packet. A checklist of all documents within the packet serves as the front page, and documents are generally marked off on the checklist when they are

2

received. At the time that Synergy hired Reese, one of the documents that Synergy typically included within this packet was a non-compete agreement which Synergy required all sales personnel to sign as a condition of employment.

Reese left his position at Synergy in late 2016 and began working for Ahern Rentals, Inc. ("Ahern"), a competitor of Synergy, in February 2017. When he applied for the position at Ahern, Reese knew Ahern to be a competitor of Synergy. Prior to employing Reese, Ahern sent a letter to Synergy requesting information as to whether Reese had signed a non-compete agreement with Synergy. Synergy did not respond to Ahern's letter.

In May 2017, Synergy learned of Reese's employment with Ahern.[2] Synergy asserted in the proceedings below that Reese had signed a non-compete agreement and that, after learning of Reese's employment with Ahern, Synergy planned to enforce it. However, Synergy could not locate an executed copy of the agreement. Additionally, the checklist that accompanied Reese's new hire paperwork with Synergy was filled out, and while it indicated that certain of the new hire documents had been received from Reese, the checklist did not indicate that the executed non-compete had been received.[3] Synergy's CEO, Steve Halliwell ("Halliwell"),

---

[2] Synergy asserted below that it did not receive Ahern's letter and did not learn of Reese's employment with Ahern until May 2017.

[3] The checklist showed that a drug test form and Reese's executed W-4 form were received as these documents were checked off on the checklist, but the non-compete agreement was not checked off as having been received.

testified below that as part of his evaluation of this situation, he communicated with Jamie Sawyer ("Sawyer"), the Synergy employee who claimed to have witnessed Reese sign the non-compete agreement. Sawyer confirmed to Halliwell that he witnessed Reese sign the non-compete agreement.[4] Synergy asserted at trial that, based on the foregoing information, Synergy sent a demand letter to Reese and Ahern expressing its intent to enforce the non-compete. Synergy explained to Ahern that it could not locate the signed non-compete, but that it intended to proceed under a lost contract theory supported by Sawyer's testimony. As of the trial below, Synergy had never found, and consequently was unable to produce, the non-compete agreement that Synergy claims Reese signed. After receiving the demand letter and discussing the missing non-compete agreement with Synergy and Reese, Ahern and its legal counsel decided to terminate Reese's employment. Reese was then unemployed for approximately 30 days before he found a new job.

In the proceedings below, Reese filed a complaint against Synergy containing two counts for violations of the federal Fair Labor Standards Act and a claim for tortious interference with an advantageous business relationship.[5] Based on Reese's

---

[4] Sawyer later testified at trial that there was a possibility that Reese did not sign the non-compete agreement.

[5] Count III of Reese's Complaint was merely labeled "tortious interference claim," but the claim clearly asserted that the alleged tortious interference was with an at-will employment relationship. The trial court and both parties treated the claim as a claim for tortious interference with a business relationship, as opposed to tortious interference with a contract.

4

assertion of federal claims, Synergy removed the case to the United States District Court for the Middle District of Florida. After the parties reached a settlement of the federal claims, the federal court remanded the tortious interference claim back to state court.

Upon remand, Reese filed a motion for leave to amend his complaint to assert a claim for punitive damages, which the trial court granted. As the basis for this motion, Reese asserted that the non-compete agreement either did not exist or was null and void, and that Synergy knew at the time that Synergy sent its demand letter to Ahern that the agreement either did not exist or was null and void.

Prior to trial, both parties filed competing motions for summary judgment. Synergy's motion for summary judgment asserted that: (1) Reese could not overcome Synergy's competition privilege; (2) Florida's impact rule barred Reese's claim for emotional distress damages; and (3) the evidence did not support an award of punitive damages. Reese's motion for summary judgment asserted that Synergy interfered with his employment with Ahern and that the interference was intentional. The trial court denied Synergy's motion and granted Reese's motion. The trial court determined that Synergy had intentionally interfered with Reese's employment with Ahern, but that there were disputed issues of fact concerning whether such interference was justified, whether the interference caused Reese to suffer damages, the amount of such damages, and the applicability of Synergy's affirmative defenses.

5

The case proceeded to trial. At trial, Reese testified about his lost wages and the emotional distress he suffered as a result of Synergy's conduct. He explained that the termination caused difficulties between him and his wife, he felt shamed, that he was unable to sleep at night, and that he felt terrible for being unable to provide for his family. Reese became withdrawn from his wife and children and embarrassed at having to explain to his children why he could not provide for them. Reese did not testify that he suffered any physical injuries or that he sought any medical treatment for his emotional distress.

After Reese rested his case, Synergy made multiple motions for directed verdict. Synergy moved for directed verdict on liability on Reese's tortious interference claim based on the argument that Synergy's actions were justified and protected by the competition privilege. The trial court denied the motion, finding that a question remained as to whether Synergy carried its burden of establishing that its actions were protected by the competition privilege.

Synergy also sought directed verdict on the issue of punitive damages on the ground that Reese presented no evidence of intentional misconduct or gross negligence as required to support a claim for punitive damages. The trial court agreed with Synergy's argument and granted this motion.

Synergy then moved for directed verdict on the issue of Reese's claim for emotional distress damages. Synergy argued that Reese's claim for emotional

6

distress damages was barred by the impact rule because Reese did not suffer any physical impact as a result of Synergy's actions. The trial court held that the impact rule does not apply to intentional torts and, on that basis, denied the motion. Synergy renewed all of its motions for directed verdict at the close of all the evidence. The trial court again denied the motions that it had denied at the close of Reese's case.

After the trial, the jury returned a verdict finding in favor of Reese on his claim for tortious interference. Specifically, the jury found that Synergy used improper methods to interfere with Reese's employment, that Synergy's improper inference was a legal cause of loss or damage to Reese, that Reese should be awarded damages to compensate for loss of wages and benefits in the amount of $36,643.50, and that Reese should be awarded damages to compensate for emotional pain and mental anguish in the amount of $50,000.00. Synergy filed a motion to set aside the verdict based on the same grounds that it asserted in its motions for directed verdict. The trial court denied Synergy's motion and entered a final judgment in favor of Reese in accordance with the jury verdict. This appeal followed.

## Analysis

As to Synergy's argument that the trial court erred by denying Synergy's motion for directed verdict and motion to set aside the verdict on the issue of liability on Reese's tortious interference claim, we find there was ample evidence to support

7

the trial court's ruling. We affirm the trial court's denial of these motions without further discussion. We write, however, to address the applicability of the impact rule to this case – which we find to be a difficult question.

## I.  The Applicability of the Impact Rule to Intentional Torts

Simply put, Florida's jurisprudence concerning the impact rule as it pertains to intentional torts is unclear.

The Florida Supreme Court first recognized the impact rule in *International Ocean Telegraph Co. v. Saunders*, 14 So. 148, 151 (Fla. 1893). *See R.J. v. Humana of Fla.*, *Inc.*, 652 So. 2d 360, 362-63 (Fla. 1995) ("The impact rule has had a long legal history in this state, beginning with this Court's decision in *International Ocean*"). In *International Ocean*, a plaintiff sued a telegraph company for its failure to timely transmit an urgent telegram from a hospital advising the plaintiff that his wife was dying and that he was needed at the hospital. 14 So. at 148. After receiving the message from the hospital, the telegraph company took over 60 hours to deliver it to the plaintiff. *Id*. at 148-49. By the time the plaintiff received the telegram, his wife had already died. *Id*. The plaintiff sued the telegraph company for the mental distress he suffered as a result of not being at his wife's side when she died and not being able to attend her funeral. *Id*. at 149. The jury found in favor of the plaintiff and awarded him damages for emotional distress. *Id*. On appeal, the Florida Supreme Court reversed the award of emotional distress damages. *Id*. at 152. The

8

Court held that in an action sounding in tort but arising out of a contract, where the plaintiff suffered mental distress alone without any accompanying physical injury or suffering, the plaintiff could not recover damages for such purely emotional distress. *Id*.

*International Ocean* involved negligence, not an intentional tort. Since recognizing the impact rule in *International Ocean*, the Florida Supreme Court has repeatedly described the impact rule as something that, by definition, applies only to negligence actions. *See Kirksey v. Jernigan*, 45 So. 2d 188, 189 (Fla. 1950) ("This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action *arising out of the negligent breach of a contract whereby simple negligence is involved*." (emphasis added)); *Champion v. Gray*, 478 So. 2d 17, 18 (Fla. 1985) (discussing "the longstanding Florida rule that a plaintiff must suffer a physical impact before recovering for emotional distress caused *by the negligence of another*" (emphasis added)); *R.J.*, 652 So. 2d at 362 ("In essence, the impact rule requires that before a plaintiff can recover damages for emotional distress *caused by the negligence of another*, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." (quoting *Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992) (internal quotations omitted)) (emphasis added)); *Gonzalez v. Metro. Dade Cnty. Pub. Health Tr.*, 651

9

So. 2d 673, 674 (Fla. 1995) ("The 'impact doctrine' which evolved from the common law of England, requires that a plaintiff sustain actual physical impact in order to recover for the *negligent* infliction of emotional distress." (emphasis added)); *Tanner v. Hartog*, 696 So. 2d 705, 707 (Fla. 1997) ("Generally stated, the impact rule requires that before a plaintiff can recover damages for emotional distress *caused by the negligence of another*, the emotional stress suffered must flow from physical injuries the plaintiff sustained in an impact." (emphasis added)); *Gracey v. Eaker*, 837 So. 2d 348, 355-56 (Fla. 2002) ("The 'impact rule' requires that a plaintiff seeking to recover emotional distress damages *in a negligence action* prove that the emotional distress flows from physical injuries the plaintiff sustained in an impact upon his person." (quoting *R.J.*, 652 So. 2d at 362 (internal quotations, alterations omitted)) (emphasis added)); *Rowell v. Holt*, 850 So. 2d 474, 477-78 (Fla. 2003) ("The [impact] rule requires that before a plaintiff can recover damages for emotional distress *caused by the negligence of another*, the emotional distress suffered must flow from physical injuries sustained in an impact." (quoting *R.J.*, 652 So. 2d at 362 (internal quotations omitted)) (emphasis added)); *S. Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 320 (Fla. 2005) ("The impact rule, which is well established in this state, requires that before a plaintiff can recover damages for emotional distress *caused by the negligence of another*, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact."

10

(quoting *R.J.*, 652 So. 2d at 362 (internal quotations omitted)) (emphasis added));

*Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) ("In Florida, the prerequisites for recovery for *negligent* infliction of emotional distress differ depending on whether the plaintiff has or has not suffered a physical impact from an external force." (emphasis added)); *Fla. Dept. of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) ("The impact rule, as applied in Florida, requires that before a plaintiff can recover damages for emotional distress *caused by the negligence of another*, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." (quoting *R.J.*, 652 So. 2d at 362 (internal quotations omitted)) (emphasis added)).

The purpose of the impact rule is to ensure the authenticity of mental distress claims. *Gonzalez*, 651 So. 2d at 674; *see also R.J.*, 652 So. 2d at 362. The Florida Supreme Court has stated that such a rule is necessary because "emotional harm is difficult to prove, resultant damages are not easily quantified, and the precise cause of such injury can be elusive." *Rowell*, 850 So. 2d at 478. "[A]llowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." *Gracey*, 837 So. 2d at 355 (quoting *R.J.*, 652 So. 2d at 362).

While the Florida Supreme Court has repeatedly reaffirmed the applicability of the impact rule to negligence actions, the Court has also carved out numerous

11

exceptions to the impact rule for specific torts sounding in negligence. *See e.g.*
*Gracey*, 837 So. 2d at 357 (recognizing an exception for negligent breach of a duty
of confidentiality as to the release of sensitive personal information); *Abril*, 969 So.
2d at 207-08 (recognizing an exception for "when a laboratory or other health care
provider is negligent in failing to keep confidential the results of an HIV test"); *Kush
v. Lloyd*, 616 So. 2d 415, 422-23 (Fla. 1992) (recognizing an exception for wrongful
birth resulting from negligent medical advice); *Tanner*, 696 So. 2d at 708
(recognizing an exception for negligent medical care resulting in a child being
stillborn); *Champion*, 478 So. 2d at 18-19[6] (recognizing an exception where a
plaintiff was in the sensory perception of physical injuries negligently inflicted upon
a close family member and where the plaintiff suffered a discernible physical injury);
*Rowell*, 850 So. 2d at 474 (recognizing an exception for negligent attorney
malpractice under certain circumstances).

The causes of actions for which the Florida Supreme Court has created
exceptions appear to all fall within a class of actions for which the foreseeable harms
flowing from the negligent conduct are predominantly emotional in nature. The
Court summarized its view on the exceptions it has created as follows:

> The impact rule is not, however, an inflexible, unyielding rule of law,
> so sacred that it must be blindly followed without regard to context. If

---

[6] The Florida Supreme Court has also referred to *Champion* as a modification
of the impact rule rather than as an exception. *See Zell v. Meek*, 665 So. 2d 1048,
1053 n.7 (Fla. 1995).

we were to ascribe such weight to the doctrine, the impact rule itself would exceed the parameters of its underlying justifications. Exceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule.

*Rowell*, 850 So. 2d at 478.

Our review of the case law demonstrates that every case in which the Florida Supreme Court has applied the impact rule to bar a plaintiff from recovering emotional distress damages was a negligence case. Since recognizing the impact rule in *International Ocean*, there has never been a case in which the Florida Supreme Court has applied the impact rule to bar a plaintiff from recovering emotional distress damages resulting from an intentional tort. The Florida Supreme Court has never stated in any case that the impact rule applies to intentional torts as a general matter. When the Court has discussed the applicability (or more precisely, the inapplicability) of the impact rule to intentional torts, it has almost always been in the context of justifying its creation or recognition of exceptions to the impact rule for certain causes of action sounding in negligence.

For example, in *Kush*, the Florida Supreme Court recognized an exception to the impact rule for wrongful birth resulting from negligent medical advice. In doing so, the Court cited to the Restatement (Second) of Torts for the proposition that the impact rule "is inapplicable to recognized torts in which damages often are

13

predominately emotional, such as defamation or invasion of privacy." 616 So. 2d at 422 (citing Restatement (Second) of Torts §§ 569, 570, 652H cmt. B (Am. L. Inst. 1977)). The Court reasoned that if the impact rule does not apply to defamation and invasion of privacy, which result in predominantly emotional damages, it should not preclude recovery for the mental anguish flowing from a wrongful birth, where such harm is equally foreseeable and certainly more grievous. *Id*. Since *Kush*, the Court has utilized this same comparison to justify recognizing additional exceptions to the impact rule. *See Gracey*, 837 So. 2d at 356-57 (holding that the impact rule should not bar recovery of emotional distress damages in an action for negligent breach of a duty of confidentiality as to the release of sensitive personal information because "[t]he emotional distress that [plaintiffs] allege they have suffered is at least equal to that typically suffered by the victim of a defamation or an invasion of privacy"); *Abril*, 969 So. 2d at 207-08 ("Because the only reasonable damages arising from a breach of [the statute governing confidentiality of HIV test results] are emotional distress, and because this emotional damage would be akin to that suffered by victims of defamation or invasion of privacy, we conclude they should not be barred by the impact rule.").

Notably, in *Kush* and *Gracey*, the Court did not state that defamation and invasion of privacy are "exceptions" to the impact rule, i.e., that they are within the scope of the rule but nonetheless carved out as exceptions. Rather, the Court stated

14

that the impact rule was "inapplicable" to these causes of action. *Gracey*, 837 So. 2d at 356; *Kush*, 616 So. 2d at 422. The Court made clear the distinction between the inapplicability of the impact rule and exceptions to the impact rule in *Rowell*, in which the Court stated:

> The impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, defamation, and invasion of privacy. *While classification has not been consistent throughout our jurisprudence, intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule*.

850 So. 2d at 478 n.1 (internal citations omitted, emphasis added).

The Court's statement that the impact rule does not apply to certain intentional torts – recognized intentional torts that result in predominantly emotional damages – could be read to imply that the impact rule does apply to intentional torts generally; thus the use of the narrower language to describe the subset of intentional torts to which the impact rule does not apply. However, despite the first sentence of this passage seeming to describe only a particular subset of intentional torts that are not within the scope of the impact rule, the Court appears to recognize in the second sentence of this passage that the Court has not brought intentional torts within the scope of the impact rule in the first place. Indeed, we can find no holding from the Florida Supreme Court applying the impact rule to an intentional tort. There is not even a statement from the Court in dicta in any case stating that the impact rule applies generally to intentional torts. A particular subset of intentional torts cannot

15

be an exception to the impact rule if the impact rule has never been extended to encompass intentional torts in the first place.

The proposition that the impact rule does not apply to intentional torts seems to find support in *Abril*, but that case too is unclear. In *Abril*, in describing the exceptions the Court has created to the impact rule, the Court stated:

> Although this Court has upheld the viability of the impact rule, it has recognized exceptions where a plaintiff may recover for emotional damages even though he or she suffered no impact or physical manifestation of the injuries. These exceptions, however, "have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding the application of the impact rule." *Rowell v. Holt*, 850 So. 2d 474, 478 (Fla. 2003). For example, we have noted that the impact rule does not apply to *any* intentional torts, such as defamation, invasion of privacy, and intentional infliction of emotional distress. *Id.* at 478 n.1.

969 So. 2d at 206-07 (emphasis added). However, the Court's description of intentional torts as an example of an "exception" to the impact rule implies intentional torts are in fact within the scope of the impact rule – which contradicts the Court's statement in *Rowell* that "intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule." *Rowell*, 850 So. 2d at 478 n.1. And the citation given by the Court in *Abril* to support its description of intentional torts as an example of an "exception" to the impact rule is actually the Supreme Court's footnote in *Rowell* stating that intentional torts are *not* exceptions to the

16

impact rule but are instead exclusions that are outside the scope of the impact rule. 969 So. 2d at 206-07 (citing *Rowell*, 850 So. 2d at 478 n.1)

Additionally, the Court stated in *Abril* that "the impact rule does not apply to *any* intentional torts," but then employs a "such as" clause that appears to specify only a certain group of intentional torts to which the impact rule does not apply. Moreover, the rest of the footnote in *Rowell* to which the Court cites for this proposition in fact made a narrower statement than the statement in *Abril* that "the impact rule does not apply to *any* intentional torts." Instead, the footnote in *Rowell* to which *Abril* cites states: "The impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, defamation, and invasion of privacy." 850 So. 2d at 478 n.1. As discussed above, the Court's statement that the impact rule does not apply to a certain subset of intentional torts could reasonably be read to imply that the impact rule does apply to intentional torts generally.

Thus, while the above-described statement in *Abril* seems to broadly state that the impact rule does not apply to any intentional torts, it also seems to imply that intentional torts are within the scope of the impact rule – because it describes intentional torts as an exception to the impact rule and intentional torts cannot be an exception to the rule unless they are within the scope of the rule in the first place. Moreover, it is not clear that the Court intended to speak so broadly when it stated

17

that "the impact rule does not apply to *any* intentional torts" because the authority to which the Court cites for this proposition does not speak so broadly and in fact makes a narrower statement and indicates that the impact rule may apply to some intentional torts. On other hand, again, if one focuses on the statement in footnote 1 in *Rowell* that "intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule," this in fact does support the proposition that the impact rule does not apply to any intentional torts because they are, by definition, outside the scope of the rule.

Other cases add to the confusion. In *Kirksey*, an intentional tort case in which the Florida Supreme Court declined to apply the impact rule, the plaintiff sued an undertaker for wrongfully taking the body of the plaintiff's deceased child without permission and then refusing to return the body after the plaintiff demanded it. 45 So. 2d at 189. The plaintiff sought emotional distress damages and punitive damages. *Id*. The trial court dismissed the plaintiff's complaint based on its conclusion that the plaintiff could not recover emotional distress damages or punitive damages.[7] *Id*. On appeal, the Florida Supreme Court found that the conduct alleged by the plaintiff could sustain an award of punitive damages. *Id*. The Supreme

---

[7] The plaintiff in *Kirksey* sought other damages as well, but those damages alone were lower than the amount necessary for the trial court to have jurisdiction. *Kirksey*, 45 So. 2d at 188-89.

Court reversed the trial court and, in discussing the plaintiff's claim for emotional

distress damages, stated:

> This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved. *Dunahoo v. Bess*, 146 Fla. 182, 200 So. 541, following *International Ocean Telegraph Company v. Saunders*, 32 Fla. 434, 14 So. 148, 21 L.R.A. 810.
>
> But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. *See* 15 Am. Jur., Damages, Sec. 179, page 596; Restatement of Torts, Section 47(b). The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it.

*Id*. First, it is unclear what the Court meant by "cases founded purely in tort," as

negligence actions are tort actions as well. However, presumably the Court intended

this statement to refer to intentional torts. Second, the Court's statement that it

declined to extend the impact rule to cases "where the wrongful act is such as to

reasonably imply malice, or where . . . such malice will be imputed as would justify

the assessment of exemplary or punitive damages" could be read to imply that the

Court would have applied the impact rule to an intentional tort that did not involve

actual malice or conduct that justified an award of punitive damages. Otherwise, the

19

Court could have resolved the case by simply holding that the impact rule does not apply to intentional torts. Instead, the Court decided the case on the narrower holding that the impact rule does not apply to intentional torts involving malice or conduct that justifies punitive damages, seemingly leaving open the question of whether the Court would have applied the impact rule to an intentional tort that did not involve malice or conduct that justified punitive damages.

In other instances, the Court has stated that "the impact rule does not apply where emotional damages are a consequence of conduct that itself is a freestanding tort apart from any emotional injury." *Hagan v. Coca-Cola Bottling Co.*, 804 So. 2d 1234, 1241 (Fla. 2001) (quoting *Tanner*, 696 So. 2d at 708 (quoting *Kush*, 616 So. 2d at 415)). Nearly every intentional tort except intentional infliction of emotional distress would seem to be a "freestanding tort" that exists separate from emotional injury. Thus, this language appears to imply that the impact rule does not apply to intentional torts. However, the Florida Supreme Court has never defined "freestanding tort" and has never specifically utilized this language to hold that the impact rule does not apply to intentional torts as a general matter. This language must also be viewed in light of the foregoing cases which could be read to imply that the impact rule does apply to intentional torts. Moreover, in *Abril*, its most recent case concerning the impact rule, the Florida Supreme Court said that the impact rule "*appears* not to apply to 'freestanding torts' which exist regardless of what

emotional damages may accompany these torts," thus leaving open the possibility that it does apply to at least some "freestanding torts" that exist without emotional damages. 969 So. 2d at 207 (emphasis added).

Ultimately, with the exception of the Florida Supreme Court's holding in *Kirksey* that the impact rule does not apply to intentional torts that involve actual malice or that justify the imposition of punitive damages, all of the Florida Supreme Court's other statements regarding the applicability of the impact rule to intentional torts are dicta because the Court has never actually applied the impact rule in any case involving an intentional tort that did not involve actual malice or conduct that justified punitive damages. *See Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) ("Any statement of law in a judicial opinion that is not a holding is dictum. A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." (internal quotations, citations omitted)). The Florida Supreme Court certainly has never squarely held that the impact rule does or does not apply to intentional torts as a general matter.

The absence of an express holding from the Florida Supreme Court regarding whether the impact rule applies to intentional torts leads us to the following decisional analysis. First, prior to 1893, the impact rule was not recognized in Florida. The Florida Supreme Court first recognized the impact rule in a negligence

case, *International Ocean*, in 1893.  The holding of *International Ocean* was that the impact rule applied in a negligence case.  Since that time, the Florida Supreme Court has repeatedly defined the impact rule as a rule that, by definition, applies only to negligence actions.  The Florida Supreme Court has never applied the impact rule to bar recovery of emotional damages resulting from an intentional tort, has never stated that the impact rule applies generally to intentional torts, and, with the exception of *Kirksey* where the Court declined to apply the impact rule to an intentional tort, has only discussed the applicability of the impact rule to intentional torts in dicta in the context of creating exceptions to the impact rule for certain negligence actions.

Despite the lack of clarity in Florida's jurisprudence on the impact rule, with holdings from the Florida Supreme Court recognizing the impact rule in negligence cases and defining the rule as something that applies only to negligence cases, and no holding from the Court ever extending or applying the impact rule to intentional torts, we conclude that the impact rule does not apply to intentional torts.

## II.    *Reid v. Daley*

Perhaps the strongest evidence of confusion in Florida's jurisprudence regarding the applicability of the impact rule to intentional torts is that despite a relatively recent and seemingly broad statement from the Florida Supreme Court that

22

the impact rule does not apply to *any* intentional torts[8], *Abril*, 969 So. 2d at 206-07,

the First District Court of Appeal held as recently as 2019 that the impact rule does

apply to intentional torts. In *Reid v. Daley*, the plaintiff filed a lawsuit in circuit

court "alleging that he was the victim of fraud, deceit, dishonesty, and

misrepresentation."[9] 276 So. 3d at 879. The plaintiff's alleged economic damages

were only $4,500.00, which was below the required amount in controversy for the

circuit court to have jurisdiction.[10] *Id*. The plaintiff alleged emotional distress

damages that were sufficient to establish the circuit court's jurisdiction. *Id*. The

defendant filed a motion to dismiss the plaintiff's complaint, arguing that the impact

rule barred the plaintiff from recovering emotional distress damages and that,

therefore, the plaintiff could not meet the jurisdictional amount-in-controversy for

circuit court. *Id*. The trial court agreed with the defendant and granted the motion

to dismiss. *Id*. at 879-80. On appeal, the First District Court applied the impact rule

to the plaintiff's intentional tort claims and, since the plaintiff did not allege that he

suffered any physical impact, held that the plaintiff was barred from recovering

---

[8] The Second District Court of Appeal has likewise stated that "The impact doctrine has no application to intentional torts . . . ." *Rivers v. Grimsley Oil Co., Inc.*, 842 So. 2d 975, 976 (Fla. 2d DCA 2003).

[9] The *Reid* opinion does not delineate in detail the specific causes of action asserted by the *pro se* plaintiff in that case but all of the alleged wrongs discussed in the opinion are intentional torts.

[10] At the time of the trial court proceedings in *Reid*, the minimum amount-in-controversy for circuit court jurisdiction in Florida was $15,000.00. 276 So. 3d at 880.

emotional distress damages. *Id*. at 880-81.  Accordingly, the First District Court affirmed the dismissal of the plaintiff's complaint. *Id*. at 881.  In doing so, the First District Court relied upon some of the unclear language discussed above in this opinion.  Specifically, the First District Court reasoned that "[t]he impact rule does not apply . . . to a 'very narrow class of cases' in which the foreseeable harms are predominantly emotional in nature." *Id*. at 880 (citing *Rowell*, 850 So. 2d at 480; *Tanner*, 696 So. 2d at 708).  Because the plaintiff's intentional tort claims did not fall "within any recognized exception to the impact rule," the First District Court held that the plaintiff's intentional tort claims were subject to the impact rule. *Id*. at 881.

Thus, as demonstrated by *Reid*, the First District Court appears to have viewed the language utilized by the Florida Supreme Court in its impact rule jurisprudence as implying that the impact rule generally applies to intentional torts but that some intentional torts are exceptions to the impact rule.  While we acknowledge the language from the Florida Supreme Court relied upon by the First District Court in *Reid*, for the reasons stated above, we disagree with the First District Court that the impact rule applies to intentional torts.  For this reason, we certify this decision to be in direct conflict with *Reid*.[11]

---

[11] In an opinion that did not discuss the impact rule, the First District Court previously upheld an award of emotional distress damages on a claim for an intentional tort that did not involve a physical impact to the plaintiff.  Indeed, it was

24

## III.    The Instant Case

Because we determine that the impact rule does not apply to intentional torts, we affirm the trial court's rulings on Synergy's motion for directed verdict and motion to set aside the verdict concerning the issue of whether the impact rule barred Reese from recovering emotional distress damages. However, even if we had determined that the impact rule applied to intentional torts generally, we would still hold that the impact rule does not apply to the tort of intentional interference with an advantageous business relationship.

As discussed above, assuming the Florida Supreme Court's holdings place intentional torts within the scope of the impact rule as a general matter, the Florida Supreme Court has stated that the impact rule does not apply to two categories of torts: (1) torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, defamation, and invasion of privacy, *Rowell*, 850 So. 2d at 478 n.1; and (2) torts "where emotional damages are a consequence of conduct that itself is a freestanding tort apart from any emotional injury." *Hagan*, 804 So. 2d at 1241 (quoting *Tanner*, 696 So. 2d at 708); *see also Abril*, 969 So. 2d at 206-07.

---

a claim for tortious interference with a business relationship. *See Albritten v. Gandy*, 531 So. 2d 381, 388 (Fla. 1st DCA 1988). It does not appear that any party raised the impact rule in *Albritten*.

While the Florida Supreme Court has never defined what constitutes a "freestanding tort," intentional interference with an advantageous business relationship would appear to be a freestanding tort that exists separate and apart from any emotional injury. Indeed, in this case, the jury found Synergy liable for economic damages in the form of lost wages. Had Reese suffered no emotional distress, Reese still would have recovered his lost wages separate and apart from any claim for emotional distress. Accordingly, even if the impact rule applies to intentional torts as a general matter, we hold that it is not applicable to the tort of intentional interference with an advantageous business relationship.[12]

Lastly, even if we had determined that the impact rule applied to the tort of intentional interference with an advantageous business relationship, we still would not apply the impact rule in this case because we cannot exclude the possibility that the jury found that Synergy acted with actual malice. As noted above, in *Kirksey*, the Florida Supreme Court held that the impact rule does not apply "where the

---

[12] The antecedent question to whether the impact rule bars recovery of emotional distress damages on a claim for tortious interference is whether the common law allowed recovery of such damages on a tortious interference claim in the first place. Neither party raised this issue below or on appeal. However, it appears that the common law did allow recovery of emotional distress damages on a claim for tortious interference with an advantageous business relationship. *See* Restatement (Second) of Torts § 774A (1979); 44B Am. Jur. 2d Interference § 58 ("The damages recoverable for tortious interference may include emotional distress if such damages can be reasonably expected to result from the interference."); *see also Albritten*, 531 So.2d at 388 (upholding an award of emotional distress damages on a claim for tortious interference with a business relationship).

wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages." *Kirksey*, 45 So. 2d at 189.

Intentional interference with an advantageous business relationship could certainly be committed with or without actual malice. In this case, for example, if Synergy knew that it did not have an enforceable non-compete agreement with Reese and sent the demand letter anyway, Synergy would have committed intentional interference and would have acted with actual malice. On the other hand, if Synergy honestly and reasonably thought it had an enforceable non-compete with Reese but was just mistaken because Reese in fact never signed the non-compete, such interference would still be intentional interference but Synergy would not have acted with actual malice.

Under the circumstances of this jury verdict, we do not know whether the jury found that Synergy acted with actual malice, but we cannot exclude the possibility. Sawyer testified at trial that he believed he saw Reese sign the non-compete agreement, and Halliwell testified that he made the decision to send the demand letter to Ahern after confirming that with Sawyer. However, Synergy did not produce a signed non-compete agreement, and Synergy's own new hire checklist did not indicate that Reese signed the non-compete. The jury was also entitled to reject

the testimony of both Sawyer and Halliwell. *See Lynch v. State*, 304 So. 3d 837, 841 (Fla. 1st DCA 2020) ("Jurors are instructed that they may accept or reject any witnesses' testimony . . . ."); *Wynne v. Adside*, 163 So. 2d 760, 763 (Fla. 1st DCA 1964) ("[A] jury is not required to accept a witness' testimony in its entirety or wholly reject it, for the jury may accept such portions of a witness' testimony as they may deem credible and consistent with the proven circumstances and probabilities and at the same time reject other portions which they deem incredible or inconsistent with the proven circumstances and probabilities."). Take away (or even just discount) the testimony of Sawyer and Halliwell, which the jury was entitled to do, and you are left with Synergy having sent a demand letter to enforce a non-compete agreement with Reese without any good faith basis to believe that Synergy had an enforceable non-compete, or perhaps at least with great indifference as to whether Synergy had an enforceable non-compete. For this reason, we cannot exclude the possibility that the jury determined that Synergy acted with malice when it intentionally interfered with Reese's employment with Ahern.

The trial court's grant of Synergy's motion for directed verdict on the issue of punitive damages also does not resolve the issue of malice. A defendant may not be held liable for punitive damages unless the trier of fact determines, based on clear and convincing evidence, that the defendant was guilty of intentional misconduct or gross negligence. § 768.72, Fla. Stat. (2008). The jury reached its verdict both on

28

liability on Reese's tortious interference claim and on the emotional distress damages based on a preponderance of the evidence standard. The fact that the trial court determined that a directed verdict was appropriate on the issue of punitive damages based on a clear and convincing evidence standard does not resolve the issue of whether the jury determined, based on a preponderance of the evidence standard, that Synergy acted with actual malice (or great indifference) in interfering with Reese's employment with Ahern.

Because we cannot exclude the possibility that the jury determined that Synergy acted with malice in committing the tort of intentional interference with an advantageous business relationship against Reese, we would find that the trial court correctly declined to apply the impact rule in this case even if the impact rule did generally apply to the tort of intentional interference with an advantageous business relationship.

## CONCLUSION

Based on the foregoing, we hold that the impact rule does not apply to intentional torts and, accordingly, we affirm the trial court's rulings in full. However, we acknowledge that there is significant confusion in Florida's jurisprudence concerning the applicability of the impact rule to intentional torts. Indeed, the First District Court very recently applied the impact rule to an intentional tort. Even if it were clear that the impact rule applied to intentional torts as a general

29

matter, given the cases discussed herein, it would still be a difficult question as to whether the impact rule applies to the tort of intentional interference with an advantageous business relationship both generally and under the facts of this case. For these reasons, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify the following two questions to be of great public importance:

(1) Subject to exceptions previously recognized by the Supreme Court of Florida, does the impact rule generally apply to intentional torts?

(2) Does the impact rule apply to the tort of tortious interference with an advantageous business relationship and, if so, does the impact rule apply when such tort is committed with actual malice?

Further, we certify this decision to be in direct conflict with *Reid v. Daley*, 276 So. 3d 878 (Fla. 1st DCA 2019).

AFFIRMED; CONFLICT CERTIFIED; QUESTIONS CERTIFIED.

ORFINGER, R.B., Associate Senior Judge, concurs.
SMITH, J., concurs in part and dissents in part, with opinion.
_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

SMITH, J., concurring in part, dissenting in part.

One of the clearest, recent holdings of the Florida Supreme Court regarding the scope of the impact rule is as follows:

30

The impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, *see Eastern Airlines, Inc. v. King*, 557 So. 2d 574, 576–77 (Fla.1990), defamation, *see Miami Herald Publishing Co. v. Brown*, 66 So. 2d 679, 681 (Fla.1953), and invasion of privacy, *see Cason v. Baskin*, 155 Fla. 198, 20 So. 2d 243, 251 (1944). While classification has not been consistent throughout our jurisprudence, intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule. *See Eastern*, 557 So. 2d at 579 (Ehrlich, C.J., specially concurring) (reiterating that a physical manifestation of psychological trauma is not required in connection with intentional infliction of emotional distress). *But see R.J.*, 652 So. 2d at 363 (discussing *Eastern* in the context of exceptions to the impact rule). There is, however, no cognizable action for simple negligence resulting in psychological trauma, alone, unless the case fits within one of the narrow exceptions to the impact rule. *See R.J.*, 652 So. 2d at 363; *Brown v. Cadillac Motor Car Div.*, 468 So. 2d 903, 904 (Fla.1985).

*Rowell v. Holt*, 850 So. 2d 474, 478 n. 1 (Fla. 2003); *see also Fla. Dept. of Corr. v. Abril*, 969 So. 2d 201, 206–07 (Fla. 2007) ("For example, we have noted that the impact rule does not apply to any intentional torts, such as defamation, invasion of privacy, and intentional infliction of emotional distress.") (citing *Rowell*, 850 So. 2d at 478 n. 1); *So. Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 320 (Fla. 2005) ("[T]he impact rule is inapplicable to recognized intentional torts that result in predominantly emotional damages such as intentional infliction of emotional distress, defamation, or invasion of privacy claims.") (citing *Rowell*, 850 So. 2d at 478 n. 1); *Kush v. Lloyd*, 616 So. 2d 415, 422 (Fla. 1992) ("Similarly, the impact

31

doctrine also generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy. Restatement (Second) of Torts §§ 569, 570, 652H cmt. b (1977)."). In *Rowell*, the supreme court sets forth three intentional torts which are presently exempted from the impact rule: intentional infliction of emotional distress, invasion of privacy, and defamation. *Rowell*, 850 So. 2d at 478 n. 1. In listing these three, the court clarifies that these are the type of torts that "result in predominantly emotional damages." *Id*.

Intentional interference with an advantageous business relationship is not a recognized exemption to the impact rule. Unlike torts such as defamation or intentional infliction of emotional distress, the predominant damage experienced from the tort of intentional interference with an advantageous business relationship is pecuniary in nature rather than emotional. For this reason, I would find it is within the scope of the impact rule. Applying the impact rule to the present facts, I concur with the majority that the jury's award for economic damages stands, but the award for emotional pain and suffering should be reversed.

In its historical review of decisions discussing the impact rule, the majority limits the rule's application to actions sounding in negligence. I would reach the opposite conclusion in looking at the history of the rule itself.

As acknowledged by the majority and several decisions of other Florida courts, the impact rule finds its roots in *International Ocean Tel. Co. v. Saunders*,

32

14 So. 148 (Fla. 1893). *See, e.g., R.J. v. Humana of Florida, Inc.*, 652 So. 2d 360, 362 (Fla. 1995) ("The impact rule has had a long legal history in this state, beginning with this Court's decision in *International Ocean*[.]"). In *International Ocean*, a hospital superintendent presented a message to the International Ocean Telegraph Company for immediate transmission to the plaintiff, whose wife at the time was near death. Rather than deliver immediately, the message was finally wired to the plaintiff over 60 hours after it was received and 10 hours after the death of plaintiff's wife. The plaintiff sued and recovered a judgment against the telegraph for $1,200, a sizeable award for the day. While the majority would focus on the fact that the claim against the telegraph was for negligence, the Florida Supreme Court stated the issued thusly:

> To this charge, exception was taken, and the error assigned thereon presents *the real issue involved* in the cause: Can an action be sustained, and can damages be admeasured, *for the breach of a contract* that results in mental suffering alone, without any accompanying physical injury or suffering, and without any concomitant damage to the person, character, reputation, or property?

14 So. at 149 (emphasis added). The court framed the central issue as one of breach of contractual duties and reversed the award of noneconomic damages further stating:

> In the case under consideration, the plaintiff's suit, though sounding in tort, is for compensation only, for *the breach by the defendant telegraph company of its contract*

33

promptly to deliver a telegram summoning him to the deathbed of his wife. His only injury, resulting directly from such breach of contract, was mental suffering and disappointment in not being able to attend upon his wife in her last moments, and to be present at her funeral. The resultant injury is one that soars so exclusively within the realms of spirit land that it is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value.

14 So. at 152 (emphasis added). The court's continued analysis clearly reveals that negligence was neither the focus nor limitation of the court's rationale and decision.

After reviewing cases from several jurisdictions involving varying causes of action, including intentional torts such as libel, seduction, and forcible ejection, the court made the following observation of the state of the existing law:

From these authorities *it seems to have been the settled rule of law*, prior to the doctrine applied by the Texas courts to the breach of contracts by telegraph companies for the transmission or delivery of telegraphic communications relating to domestic affairs, that *mental suffering was never allowed to be considered as an element of damages for which pecuniary compensation could be awarded, except (1) in cases of torts, where there was some physical injury and bodily suffering,* in which cases, whether there were any circumstances justifying exemplary damages or not, the mental suffering, incident to, connected with, and flowing directly from the physical injury was permitted to be considered in connection with the physical pain, both taken together, but not the one disconnected from the other; and *(2) in cases founded purely in tort, where the negligence was so gross as to reasonably imply malice*, or where, from the entire want of care or attention to duty, or great indifference to the persons, property, or rights of others, such malice will be

34

> imputed as would justify the assessment of exemplary or punitive damages; and (3) in cases growing out of contract, in the one exceptional case of the breach of a contract to marry.

14 So. at 151. The court did not limit the impact rule to actions involving negligence, rather, the language quite broadly encompasses "torts." *Id*.

The Florida Supreme Court again addressed the impact rule in terms clearly outside the negligence construct in *Kirksey v. Jernigan*, 45 So. 2d 188 (Fla. 1950). In *Kirksey*, the court considered whether the impact rule should apply to the intentional tort of tortious interference with dead bodies. In allowing a recovery for mental suffering and anguish, the court held:

> This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved.

> But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages.

45 So. 2d at 189 (internal citations omitted).

Three more points raised by the majority will be addressed.

- *Has the Florida Supreme Court excluded all intentional torts from the impact rule?*

35

The majority concludes that language by the court in *Rowell* and *Abril* could be read to mean that the court excluded all intentional torts from the impact rule's application. As discussed above, the *Rowell* court stated:

> The impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, defamation, and invasion of privacy. *While classification has not been consistent throughout our jurisprudence, intentional torts have been deemed exclusions from, as opposed to exceptions to, the impact rule.* There is, however, no cognizable action for simple negligence resulting in psychological trauma, alone, unless the case fits within one of the narrow exceptions to the impact rule.

*Rowell*, 850 So. 2d at 478 n. 1 (all internal citations omitted) (emphasis added). The majority states, "despite the first sentence of this passage seeming to describe only a particular subset of intentional torts that are not within the scope of the impact rule, the Court appears to recognize in the second sentence of this passage that the Court has not brought intentional torts within the scope of the impact rule in the first place." I would disagree with that assessment. The supreme court has in *Rowell* described certain recognized intentional torts as "exempted" from the rule, and certain classes of negligence actions as "exceptions" to the rule. Had the Florida Supreme Court meant to expressly exclude all intentional torts from the scope of the rule, the court could have at any point in the last 100 years said, "all intentional torts are excluded from application of the impact rule." The court has never done so.

The majority then relies on the following language from *Fla. Dept. of Corr. v. Abril*, 969 So. 2d at 206–07, "For example, we have noted that the impact rule does not apply to any intentional torts, such as defamation, invasion of privacy, and intentional infliction of emotional distress. [*Rowell*] at 478 n. 1." While the *Abril* court included the word "any" as a descriptor of "intentional torts" when citing the *Rowell* decision, this does nothing to change the court's pronouncement in *Rowell* or the meaning of the sentence itself. The court left on the express list of currently exempted intentional torts (defamation, invasion of privacy, and intentional infliction of emotional distress), inferring that "any intentional torts" was limited to that list and torts of a similar nature. It would be akin to a park sign reading, "Persons are not permitted to bring any dogs into the park such as Pit Bulls, Doberman Pinschers, and Rottweilers." Never would such a sign be interpreted to prohibit a park attendee from bringing a toy poodle. The three torts listed by the *Abril* court are those that meet the description set forth in *Rowell*, that being torts which "result in predominantly emotional damages." I cannot conclude that intentional interference with an advantageous business relationship results predominantly in emotional damages like the torts expressly excluded in *Rowell*.

- *Can the emotional damages be affirmed based on an implied finding of malice?*

37

The second argument to be addressed is the majority's opinion that "even if we had determined that the impact rule applied to the tort of intentional interference with an advantageous business relationship, we still would not apply the impact rule in this case because we cannot exclude the possibility that the jury found that Synergy acted with actual malice." The malice defense cited by the majority stems from the *Kirksey* decision and the following excerpt from the holding: "But we do not feel constrained to extend this rule to cases founded purely in tort, *where the wrongful act is such as to reasonably imply malice*, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages." *Kirksey*, 45 So. 2d at 189 (emphasis added).

While proof of actual malice could have been raised had the lower court and jury considered the impact rule, it was Mr. Reece, the plaintiff below, who successfully argued to the lower court that the impact rule should not apply. Had the impact rule been considered, the trial court could have instructed the jury on making a finding of malice to permit emotional damages despite the lack of a physical impact. Because such an instruction was never given to the jury, the issue was unpreserved and any resultant error was invited.

As a final point, the record itself does not irrefutably support the existence of malice. Malice is not an element of intentional interference with an advantageous

38

business relationship.  Additionally, Mr. Reece testified at trial he was unaware of anyone at Synergy having malice toward him.[13]

- *Is intentional interference with an advantageous business relationship a freestanding tort?*

The last argument of the majority to be addressed (which is not an argument raised by either party on appeal) is the assertion that intentional interference with an advantageous business relationship is a freestanding tort, and therefore the impact rule should not apply.  For this assertion, the majority relies on language from the Florida Supreme Court in *Kush v. Lloyd*, 616 So. 2d 415, 422 (Fla. 1992):

> However, we are not certain that the impact doctrine ever was intended to be applied to a tort such as wrongful birth. Prosser and Keeton state that the impact doctrine should not be applied where emotional damages are an additional "parasitic" consequence of conduct that itself is a freestanding tort apart from any emotional injury. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361–65 (5th ed.1984). The American Law Institute is in general accord. Restatement (Second) of Torts § 47

---

[13] Mr. Reese testified at trial as follows:

Q: Mr. Reese, while working at Synergy, did you have reason to believe that anyone at Synergy did not like you or held malice toward you?
A: Not that I recall.
 * * *
Q:  So as you sit here today, you cannot identify any Synergy employee who you believe held you in some kind of contempt?
A:  Not to my knowledge.

39

> & § 47 cmt. b (1965). Obviously, the Lloyds have a claim for wrongful birth even if no emotional injuries had been alleged.

Wrongful birth is the only example that currently exists of a "freestanding tort." Wrongful birth is a tort sounding in negligence; it is not an intentional tort.

The majority concedes that the term "freestanding tort" has not been expressly defined by any court, however the majority proceeds to define it as any tort that "exists separate and apart from any emotional injury." The clear problem with the majority's definition of "freestanding tort" comes back to the premise of this dissent. The Florida Supreme Court has repeatedly held that defamation, invasion of privacy, and intentional infliction of emotional distress are "recognized intentional torts" exempted from the impact rule which "*primarily* result in emotional damages." *See e.g.*, *Rowell*, 850 So. 2d 474, 478 n. 1 (Fla. 2003) (emphasis added). Defamation, for instance, can encompass economic as well as emotional and reputational damages thereby existing "separate and apart from any emotional injury." Thus, under the majority's definition, defamation would be a freestanding tort. So why would the supreme court then need to say it is a "recognized exemption" to the impact rule? A freestanding tort would not require "exemption" from the impact rule. I am not inclined to extend the phrase "freestanding tort" to go beyond the one and only tort the Florida Supreme Court has placed in this category so far: a negligence claim for wrongful birth.

As to certification of a question to the Florida Supreme Court, I agree with my colleagues that a question should be certified. I would restate and condense the majority's certified questions to the following:

Does Florida's impact rule apply to a claim for tortious interference with an advantageous business relationship?

For the reasons noted above, I respectfully dissent in part.

_____

Michael Fox Orr and Megan Claire Comunale, of Orr | Cook, Jacksonville, for Appellant.

Scott C. Adams and N. Ryan Labar, of Labar & Adams, P.A., Orlando, for Appellee.